UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LOUIS DORO,

                       Plaintiff,

       - against -

LOCAL UNION 38, SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION, and SHEET
METAL WORKERS' INTERNATIONAL
ASSOCIATION, and GINO COLOMBO,
President of Local Union No. 38, in his official
and individual capacities,

                    Defendants.
------------------------------------------------------------x

04 Civ. 8171 (CLB)

*Memorandum and Order*

Brieant, J.

      Before the Court are two motions in this action brought under 29 U.S.C. §412 and arising out of a dispute within a labor union. By motion filed August 30, 2005 (Doc. No. 15), Defendant Sheet Metal Workers' International Association ("SMWIA" or "the International") moves for summary judgment. On October 7, 2005, Plaintiff filed a cross motion (Doc. No. 21) for summary judgment on liability. Each side has opposed the other's motion and replied to each other's opposition.

      Pursuant to a partial stipulation of discontinuance dated July 6, 2005, the case was settled and dismissed as to defendants Local Union No. 38 and Gino Colombo, President of Local Union No. 38.

      The following facts are either undisputed or assumed true for purposes of these motions

1

only. Plaintiff has been a member of Local 38 and the SMWIA since 1989. On October 22, 1998, Local 38 mailed Plaintiff written disciplinary charges of misconduct, charges that Plaintiff accepted substandard wages and benefits for work performed above 40 hours with knowledge that union benefits were not being paid for him. Plaintiff was employed at P & P Sheet Metal at that time. Plaintiff contends that he was denied due process because the charges did not include a description of the time and place where such substandard work was performed and whether that wrongful work actually consisted of sheet metal work.

On November 4, 1998, Local 38's trial committee held a trial on the disciplinary charges Plaintiff contends he was not presented with any documentary evidence against him, nor could he confront witnesses as none testified against him. Plaintiff also complains that the trial was conducted only 13 days after mailing the notice, in violation of the operative SMWIA Constitution and Ritual, Article 18, Section 2(d) ("Trial in Local Unions"), which requires that a trial not begin sooner than 15 days from the date that a notice of charges is mailed. *See Watkins Aff., Ex. 6 p.86.* The charging party was Nicholas Colombo, brother of Local 38's President, Gino Colombo, who presided over the trial committee which heard the charges against Plaintiff. Joseph Colombo, who is Nicholas' son, was also a member of the trial committee.

On November 18, 1998, Gino Colombo read the "trial minutes" to the Local 38's membership, which voted to ratify the findings of guilt and imposition of an $11,096 fine, which Plaintiff paid. He filed a timely appeal of the decision to Arthur Moore, the General President of the SMWIA. On January 22, 1999, General President Moore affirmed that decision. On June

2

16, 1999, the General Executive Council met in Boston, MA, where Plaintiff received a further hearing on his appeal. On July 17, 1999, Plaintiff was notified that the Council had denied his appeal, but had modified the penalty to remove any possibility of expulsion.

On September 2, 1999, Plaintiff appealed the General Executive Council's decision to the General Convention. Almost five years later, on July 6, 2004, Plaintiff was advised of his right to appear before the Grievance and Appeals Committee in Chicago, IL, to speak on behalf of his appeal which Plaintiff did on August 20, 2004,. The Committee concluded that there was no basis to warrant reversal of the General Executive Council's decision. It determined that Plaintiff had acknowledged violating the SMWIA Constitution, and that he knew that he could have exercised his right to have the two members of the local union trial board, who were related to the charging party, removed from the trial board, had he so requested at the time. The General Convention adopted the Committee's decision during the SMWIA's General Convention held in Chicago, IL from August 23 -28, 2004. Plaintiff filed his Complaint in this Court on October 18, 2004.

Meanwhile, on November 27, 2001, a jury in the Southern District of New York found that the same charges presented to Plaintiff, which had the same day been presented to Plaintiff's co-worker, Anthony Pelella, violated 29 U.S.C. § 411(a)(5), due to their lack of specificity. Local 38 was ordered to pay $1.00 in compensatory and $25,000 in punitive damages to Pelella, which award was subsequently affirmed on appeal in *Local Union No. 38 v. Pelella*, 350 F.3d 73 (2d Cir. 2003). In denying Local 38's motion to set aside the award of punitive damages,

Magistrate Judge Yanthis held that "the jury was entitled to conclude based upon the trial evidence that the charges served on him by Local 38 were woefully inadequate and did not provide him with the specificity required by the statute" and "there was sufficient evidence at trial from which a reasonable jury could conclude that punitive damages were justified." *Watkins Aff. Ex. 7 at 6.*

*Defendant's Motion for Summary Judgment*

Defendant moves for summary judgment under the second proviso of 29 U.S.C. §411(a)(4). The statute provides, in pertinent part:

> No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, ... provided [] that no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

29 USCS § 411.

Defendant argues that Plaintiff, in addition to being a member of Local 38 and SMWIA, is presently employed by and part-owner of a company, CAQS, Inc. which is a signatory sheet metal contractor with Local 38. Plaintiff receives a salary for his employment by CAQS and used salary funds to pay his attorney for the prosecution of this suit. It is contended that for this reason alone, CAQS is therefore an interested employer, which is "directly or indirectly" financing or participating in this action, contrary to the second proviso of the statute. Defendant argues in the alternative that Plaintiff is himself an interested employer, because he is a shareholder and Vice President of CAQS.

4

In *Local Union No. 38 v. Pelella*, 350 F.3d 73, 83 (2d Cir. 2003), our Court of Appeals noted that "Congress enacted the LMRDA [Labor-Management Reporting and Disclosure Act] to correct widespread abuses of power and instances of corruption by union officials" and to "prevent union officials from abusing their disciplinary powers." (citations and quotations omitted). It further stated that the purpose of the second proviso in Section 411(a)(4) is "to protect unions from harassing litigation and illegal management interferences with their internal disputes with dissident workers." *Id. at 84* (citations and quotations omitted). Ultimately, the Court held that the statute did not apply to a counterclaim.

When the challenged union discipline occurred in 1998, Plaintiff was employed by P & P Sheet Metal, an unrelated sheet metal contractor and Local 38 signatory. It was not until April 2000 that Plaintiff became an employer. Plaintiff's subsequent partial ownership of CAQS should not retroactively forbid his individual pursuit of a remedy for alleged violations in 1998. Plaintiff has been in persistent pursuit of his rights since the alleged violation in 1998. That his pursuit was dramatically delayed was not his fault. His rights were vested at the very latest when he paid the fine. This case is not factually within the evil sought to be remedied by the statute. Assertion of this claim by a union member is not illegal management interference with an internal Union dispute. At the time the dispute arose, Mr. Doro was not an employer. There is no showing that his salary is excessive, or used by his employer as a means to subsidize the litigation in a clandestine fashion.

Plaintiff testified on deposition, without dispute, that for this lawsuit he has paid $1,500

to his attorneys from his personal checking account, which funds come from his weekly pay. *Watkins Aff., Ex. 1, 74-75, 92.* Plaintiff's $1500 payment in attorney's fees out of his own personal earnings for this case does not constitute "encouraging and participating" by CAQS, in this action. The dispute antedates CAQS, and was delayed through no fault of Plaintiff or his employer. It cannot reasonably be said that Plaintiff's last resort to federal litigation for a due process violation in 1998 constitutes "harassing litigation and illegal management interference" by CAQS or by Plaintiff himself. Rather, it is a reasonable effort to redress a good faith dispute between a union and its member.

As noted earlier, the sole ground for Defendant's motion is the claimed bar of 29 U.S.C. § 411(a)(4) which this Court finds insufficient in law. Liability of Local 38 in this action is clear and not relevant. This case has settled as to Local 38 and the International was not a party to the companion *Pelella* case referred to above. The *Pelella* case therefore has no *stare decisis* value here. The Court should not confuse liability on the part of Local 38 with liability on the part of the International which apparently acted only in the capacity of appellate review.

The essential wrongdoing in this case occurred on the Local Union level. The only contention here is that the International, while acting as a quasi-judicial appellate body, knowingly ratified the unlawful action when it affirmed the determination of the local union, with a slight modification favorable to Plaintiff.

There is no showing on the record presently before this Court that the International, in

6

connection with its various levels of appellate ratification and partial ratification acted with bad faith. Clearly, the International had no obligation to make an independent investigation of the appellate record which was submitted to it, or to intervene in the affairs of the local union.

Persons acting in a quasi-judicial capacity adjudicating a dispute on a record developed below are entitled to act in good faith and should not be liable for making a wrong decision. It was not facially unreasonable for the appellate body to determine that Mr. Doro waived his right to challenge and have removed the two members of the Local Union trial board who are related to the charging party, and also that he admitted the violation. The power to review decisions includes the right to be wrong.

In the absence of any bad faith in reaching what appears to be a decision based substantially on omissions in the record before it, this Court concludes not only that the Plaintiff's Motion for Partial Judgment on Liability should be denied but that Summary Judgment should be granted in favor of the opposing party dismissing the Complaint. Plaintiff cannot demonstrate that the actions of the International in deciding a dispute wrongly on several levels is actionable by reason of any showing of bad faith. The decision on appeal, relying as it does on a waiver of the conflict of interest of two trial committee members and a claimed admission of the violation, should not be the basis for imposing monetary liability on the International, absent a showing of bad faith not present in the record before this Court.

**<u>Conclusion</u>**

Defendant's Motion for Summary Judgment on the grounds asserted is denied. Plaintiff's Motion for Summary Judgment is denied and the Court of it's own motion grants Summary Judgment in favor of the International, dismissing the action for want of merit. The Clerk shall file a final judgment. No costs.

X

        X

              X

                    X

                        X

SO ORDERED.

SO ORDERED.

Dated: White Plains, New York
       December 19, 2005

                                                                                            _____
                                                                                            Charles L. Brieant, U.S.D.J.